FILED
CLERK
3:02 pm, Mar 29, 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ROBERT NICOSIA,

                     Plaintiff,

      v.

SANITARY DISTRICT SIX OF THE TOWN
OF HEMPSTEAD,

                     Defendant.
---------------------------------------------------------------X

**MEMORANDUM AND ORDER**
17-CV-7292 (SJF) (AKT)

FEUERSTEIN, District Judge:

      Plaintiff Robert Nicosia ("Plaintiff" or "Nicosia") commenced this case against defendant Sanitary District Six of the Town of Hempstead ("Defendant" or "Sanitary District") pursuant to 42 U.S.C. §1983 claiming violations of his rights to free speech and assembly under the First Amendment, and asserting that Defendant is liable in light of its deliberate indifference to the violations of Plaintiff's constitutional rights.[1]  This is the second case filed against Defendant in this Court asserting the same claims.  Currently before the Court is Defendant's motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Motion, Docket Entry ("DE") [20].  Plaintiff opposes the motion.  For the reasons set forth below, the motion is granted, and the case dismissed.

**I. BACKGROUND**

**A. Factual Background**

      The following facts are taken from the complaint ("Compl."), DE [1], and are assumed to be true for purposes of this motion.  Nicosia has been an employee of the Sanitary District and

---

[1]The allegations regarding Defendant's liability constitute Plaintiff's attempt to impose liability on a municipality pursuant to *Monell v. Dep't of Soc. Servs.*, 437 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

has been for thirty-five (35) years. Compl. ¶¶3-4. At some unspecified time during his tenure, Nicosia was an active union member and "candidly shared his political views and affiliations." *Id.* ¶3.[2]

Plaintiff alleges, upon information and belief, that the Commissioner of the District Board for the Town of Hempstead, in conjunction with the leader of the Republican Clubs, determines promotion and hiring for supervisory positions in the Sanitation Department. Compl. ¶5. An individual is not likely to receive a promotion or supervisory position unless that individual is a member of a Republican Club. *Id.* ¶6. "Initially," Nicosia was a member of the West Hempstead Republican Club (the "Club"), and his wife, Debra Nicosia, was the Club's President. Compl. ¶ 4. He viewed his affiliation with the Club as "advantageous" because "Defendant favored employees who were aligned with the Club." *Id.*

On or about March 9, 1998, a "supervisor, committee and Club member," Joseph Murphy, wrote a letter on Plaintiff's behalf to Mr. Easa, the head of the Club, recommending that Plaintiff be promoted to a seasonal supervisor with the Sanitation Department. Compl. ¶7. Although Easa had never been employed by the Town of Hempstead and his only connection with the Town was through the Club, Plaintiff needed Easa's approval for a promotion. *Id.* ¶8. In or around 2001, Nicosia was approved as a seasonal supervisor for the Sanitation Department. *Id.* ¶9. Although he was categorized as a "seasonal" supervisor, his appointment continued "uninterrupted for approximately three (3) years." *Id.* ¶10.

In or around 2007, Plaintiff and his wife met with Easa regarding their daughter's illness and noted the possibility that that might have to withdraw from the Club. Compl. ¶11. Easa told

---

[2] The paragraph numbers cited comport with the numbers in the complaint, which begins with paragraphs "1" through "4", then starts over again in the "Factual Allegations" section at paragraph "1," and inexplicably starts the "Claims for Relief" section with paragraph "5."

2

them that he was planning to retire from his position at the Club and would be replaced by William Rockensies. *Id.* ¶12. He further advised that Plaintiff would not be getting his full time supervisory position because Rockensies intended to give it to a friend, Mike Makar. *Id.* Rockensies has never worked for the Sanitation Department and his only connection to it was through the Club. *Id.* ¶13.

In or around 2007, Plaintiff and his wife withdrew from the Club and ceased making monetary contributions to it. Compl. ¶14. At some unspecified time "shortly after," Rockensies became the head of the Club, Plaintiff was "overlooked for the supervisory position that he was promised and Mike Makar was given Plaintiff's intended position." *Id.* ¶15. Plaintiff claims he was targeted after he and his family withdrew from the Club resulting in his demotion from the supervisory position and reassignment to work on the back of one of Defendant's sanitation trucks. *Id.* ¶16. His salary was decreased by approximately $10,000.00 per year. *Id.* ¶17.

Other employees who had held "seasonal" supervisory positions at the same time as Plaintiff but who had remained active in the Club were promoted to full-time supervisors in 2008. Compl. ¶18. In or around 2010, Plaintiff was assigned as a Motor Equipment Operator for Defendant's Truck No. 2. *Id.*

Plaintiff alleges that Defendant purposefully kept him in a lower position while promoting more junior and less experienced Club members when a full-time supervisory position became available. Compl. ¶19. He maintains that there were "abundant supervisory positions open" during his employment. *Id.* ¶20. He provides the names of eight individuals with "less seniority and experience" who were promoted to full time supervisors between 2005 and 2015. *Id.* ¶¶21-22. Although he alleges that all eight were members of various Republican Clubs, the complaint only provides information about seniority as to two individuals: Dave Murphy, hired

in or around 2002 and promoted in or around 2015, and Anthony Russo, date of hire April 2008 promoted in or around 2015. *Id.* ¶22. The complaint contains no specifics regarding how these individuals came to be promoted and who made the decisions to effect these personnel moves.

In March 2016, Plaintiff commenced an action against the Defendant regarding its hiring and promotion practices. *Nicosia v. Town of Hempstead,* 16-cv-1176 (the "First Action"). Compl. ¶23. Shortly thereafter, he was retaliated against in the workplace and was subjected to obscene gestures and vulgarities. *Id.* ¶24. Between March 14 and 16, 2016, several modified news articles and photographs were circulated at the workplace that suggested Plaintiff was involved in a homosexual relationship with a co-worker, Diehl, who had also filed a lawsuit, and included other false and derogatory statements about Plaintiff. *Id.* ¶25-26. A photograph of rats with Plaintiff's name on it was posted in the Department's locker room. *Id.* ¶28. On March 17, 2016, Paul Cigna, another Sanitation Department employee, attempted to run Plaintiff over with a Sanitation Department truck. *Id.* ¶29. Plaintiff claims that Defendant failed to remedy the situation and he was forced by Defendant to file a sexual harassment complaint with the Town, causing him further humiliation. *Id.* ¶31.

Plaintiff alleges that he continues to feel anxiety as a result of the unfair and hostile treatment he continues to receive "as a result of retaliation for the lawsuit" he filed regarding Defendant's promotion practices. Compl. ¶33. He claims that on or about September 18, 2017, he sent a letter to the Sanitation Department requesting a promotion, but was advised in October 2017 that the Department was not hiring supervisors. *Id.* ¶¶35-36. Plaintiff alleges upon information and belief that another employee, Steve Fredericks, was promoted from supervisor, a position he had held since 1990, to regional supervisor on or about September 17, 2017. *Id.* ¶37.

## B. The First Action

As mentioned above, Plaintiff commenced the First Action in March 2016. In that case, Nicosia asserted claims pursuant to §1983 for retaliation in violation of his first amendment rights of free speech and assembly, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 *et seq.*, and the New York States Human Rights Law ("NYSHRL"), N.Y. EXEC. LAW §290 *et seq*. It also included a paragraph seeking "Defendant's Liability" under *Monell*. In June 2016, Nicosia filed an amended complaint to include factual allegations of the retaliatory conduct allegedly experienced by him in March 2016.

Defendant moved to dismiss the amended complaint, and the motion was referred to the Magistrate Judge Steven I. Locke for Report and Recommendation ("R&R"). The R&R was issued on June 14, 2017 and recommended that the motion be granted. R&R, 16-cv-1176, DE [51], 2017 WL 9485669 (E.D.N.Y. June 14, 2017). Magistrate Judge Locke found, *inter alia,* that there was no plausible claim for municipal liability given the lack of factual allegations supporting an inference that a municipal policy or custom existed, citing Plaintiff's failure to identify any office holder, supervisor, or policy maker in the Sanitation Department connected with the allegedly violative activities. R&R, 2017 WL 9485669, at *5. Noting Plaintiff's allegations about harassment suffered by his co-worker, Diehl, Magistrate Judge Locke found that "two separate incidents alleged by two individuals are insufficient to establish a common practice for *Monell* liability as a matter of law." *Id.* The R&R recommended, *inter alia,* that the claims be dismissed as Plaintiff failed to allege *Monell* liability.

Upon review of the parties' objections and responses to the R&R, this Court overruled Plaintiffs' objections, adopted the R&R in its entirety, and dismissed the case. *See* Opinion & Order ("Op. & Order"), 16-cv-1167, DE [58], 2017 WL 3769246 (E.D.N.Y. Aug. 28, 2017).

## C. Procedural History

The current action was filed on December 2017. The Complaint contains substantially similar allegations, with minor factual enhancements, of Plaintiff's treatment up through March 2016. The new allegations relating to conduct occurring after filing of the amended complaint in the First Action are set forth below in their entirety:

> 33. Plaintiff continues to feel emotionally overwhelmed, stressed, depressed and anxious which is due to the unfair and hostile treatment Plaintiff received, and still continues to receive from Defendant and its employees as a result of retaliation for the lawsuit made against Defendant regarding the unlawful and unjust hiring and promoting of employees.
>
> 34. Defendant's actions were and are intended to create a hostile work environment that no reasonable person would tolerate.
>
> 35. On or about September 18, 2017, Plaintiff sent a letter to the Sanitation Department requesting consideration to be promoted to a supervisor position.
>
> 36. Subsequently, in or around October 16, 2017, Plaintiff received a letter from Defendant stating the District was not hiring supervisors at the time.
>
> 37. Upon information and belief in or around September 27th, 2017 Steve Fredericks, who was hired the same year as Plaintiff, who was promoted to supervisor for Defendant in or around April 16, 1990, was promoted to regional supervisor.
>
> 38. To date, while remaining a dedicated, loyal, and capable employee, Plaintiff has not ever been promoted to full time supervisor with the Sanitation Department.
>
> 39. The above are just some of the examples of unlawful conduct to which Defendant subjected Plaintiff on an ongoing basis.

Compl. ¶¶33-39.

The complaint sets forth two (2) claims for relief. In the First Cause of Action, Plaintiff claims a violation of his free speech rights under the First Amendment of the United States Constitution in that that Defendant has "unlawfully retaliated" against him "due to his constitutionally protected activities in speaking out on issues of public concern in the course of his activities in the union." Compl. Claims ¶5. In the Second Cause of Action, Plaintiff claims a violation of his First Amendment assembly rights because Defendant has "unlawfully retaliated" against him "due to his constitutionally protected activities in free assembly as part of a labor union." *Id.* ¶6.[3] The Complaint also includes a paragraph under the title "Defendant's Liability" in which Plaintiff claims that "Defendant, while acting under color of law, deprived Plaintiff" of his constitutional rights in that it "intentionally committed, condoned or was deliberately indifferent" to his rights." *Id.* ¶7. He further alleges that Defendant had a "custom or practice" of depriving Plaintiff of his rights, that these practices were "so persistent and wide spread that they constitute the constructive acquiescence of policy makers," and that [p]olicymakers engaged in and/or tacitly condoned the deprivations." *Id.* With the exception of the absence of an allegation of inadequate training/supervision in the *Monell* claim, these claims are identical to those set forth in the First Action.[4]

Defendant has moved to dismiss the complaint as barred by *res judicata*. It also claims that the statute of limitations has run on Plaintiff's First Amendment retaliation claims, that

---

[3] In both the First Action and in this case, Plaintiff's claims for First Amendment are allegedly based on retaliation related to his union activities, but there are no substantive allegations supporting any such claim. *See, e.g.,* R&R, 2017 WL 9485669, at *2 n.3 (noting the absence of any allegation "that connects his union membership to any of the events addressed in the Amended Complaint").

[4] Plaintiff also asserted age discrimination and state law claims in the First Action that he has not reasserted here.

7

Plaintiff has failed to state a claim of First Amendment retaliation, and has not plausibly alleged municipal liability under *Monell*.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

Defendant seeks dismissal of the action pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The standards for analyzing a motion to dismiss are well-established. The court must accept the factual allegations in the complaints as true and draw all reasonable inferences in favor of the plaintiff. *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (citations omitted). The court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S at 678 (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

The determination of "whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S at 679. A pleading that does nothing more than recite bare legal conclusions, however, is insufficient to "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678-679; *see also Twombly,* 550 U.S. at 555 (holding that a "formulaic recitation "formulaic recitation of cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level."). While Rule 8 does not require "detailed factual allegations," it does require more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

**III. DISCUSSION**

**A.** *Res Judicata*

In a federal-question case, the preclusive effect of a prior judgment by a federal court is determined by federal common law. *See Taylor v. Sturgell*, 553 U.S. 880, 891, 128 S. Ct. 2161, 2171, 171 L. Ed. 2d 155 (2008). The term "res judicata" collectively refers to the preclusive effects of a judgment by claim preclusion and issue preclusion. *See Taylor*, 553 U.S. at 892. Claim preclusion "generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *New Hampshire v. Maine*, 532 U.S. 742, 748, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001). The doctrine of issue preclusion concerns "the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim." *Id.* at 748-49.

Defendant argues that the complaint should be dismissed "to the extent that [Plaintiff] seeks to relitigate claims previously decided by the Court" in the First Action. *See* Memorandum of Law in Support ("Def. Mem. of Law") at 7, DE [22]. In his memorandum of law in opposition to the motion, Plaintiff cites a Second Circuit case for the premise that "[w]hile claim preclusion bars relitigation of the events underlying a previous judgment, it does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit." *Curtis v. Citibank, N.A.,* 226 F.3d 133, 139 (2d Cir. 2000). He goes on to indicate that this current litigation is based on actions occurring after the First Action was decided – "Plaintiff accepted the prior ruling of this Court and intended to move forward. He inquired about the availability of a supervisory position. . . Defendant responded that they were not hiring

9

supervisors. . . Based on their letter and subsequent action Plaintiff realized that he was misled. That action forms the basis for this action." Plaintiff's Memorandum of Law in Opposition ("Pl. Mem. in Opp.") at 13 (citations to complaint omitted), DE [23].

As Plaintiff implicitly recognizes, his claims that were previously raised and decided in the First Action are barred by *res judicata* and cannot be relitigated in this action. Accordingly, the analysis turns to a determination of whether the complaint plausibly states a claim for relief arising from the actions taken against Plaintiff subsequent to the filing of the amended complaint the First Action.

## B. Defendant's *Monell* Liability

"To state a *Monell* claim for official or municipal violation of constitutional rights, a plaintiff must adequately plead an official policy or custom that resulted in the violation alleged." *Arroyo v. City of New York*, 683 F. App'x 73, 75 (2d Cir. 2017) (summary order). The "policy or custom" requirement may be satisfied by allegations of the existence of "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Jones v. Bay Shore Union Free Sch. Dist.*, 170 F. Supp. 3d 420, 438 (E.D.N.Y.) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010)), *aff'd*, 666 F. App'x 92 (2d Cir. 2016). Plaintiff here contends that he has alleged facts "of a practice so widespread that the municipality must be aware." Pl. Mem. in Opp. at 9.

10

Plaintiff's claim that *Monell* liability should be imposed as to conduct occurring through March 2016 was resolved by issuance of the decision dismissing the First Action and may not be relitigated here. Accordingly, the Court need only examine the allegations regarding new conduct to determine whether Plaintiff has established *Monell* liability for Defendant's failure to promote him in the fall of 2017.

Drawing all reasonable inferences in Plaintiff's favor, his current claim can be summarized as follows: he requested by letter "consideration to be promoted to a supervisor position," Am. Compl. ¶35; that request was denied; and the proffered reason for that denial, that the District was not hiring, was untrue given the promotion of Fredericks. He does not allege conduct whatsoever by any individual responsible for the denial of his request, nor does he allege that the decision was politically motivated, failing even to allege that Fredericks was favored because, unlike Plaintiff, he was a Republican Club member.[5] Even assuming *arguendo,* that Fredericks was a Republican Club member, the allegations do not plausibly infer that a policy or practice led to Defendant's failure to promote him.

Plaintiff attempts to impose *Monell* liability on the basis that Defendant was aware of the custom and policy, arguing that "by the fall of 2017, Defendant was aware of Plaintiff's claims." Pl. Mem. in Opp. at 10. Mere awareness of Plaintiff's complaints, however, does not translate into the municipality's awareness of an unauthorized custom or policy that resulted in a violation of Plaintiff's constitutional rights. Put differently, Defendant's awareness of Plaintiff's

---

[5] In his memorandum in opposition, Plaintiff offers additional facts such as that: 1) Defendant "hired another Republican instead of Plaintiff;' 2) the rejection letter was signed by J. Michael Cairo, as Secretary to the Board; and 3) "[a]ll of the acts that make up Plaintiff's complaints were ratified at Defendant's headquarters." Pl. Mem. in Opp. at 11. The Court declines to consider these new allegations "because long-standing precedent in the Second Circuit prevents parties from amending the pleadings by raising new issues in their briefs." *In re Manulife Fin. Corp. Sec. Litig.,* 276 F.R.D. 87, 90 (S.D.N.Y. 2011). Even if the Court were to consider these facts, they do not move Plaintiff's case from implausible to plausible.

*allegations* that a policy exists does not lead to the conclusion that there actual *was* a policy. Moreover, the lone fact that Plaintiff was not promoted in 2017 does not state a constitutional violation let alone establish that any decision was made pursuant to a custom or policy. It is Plaintiff's burden to allege facts that plausibly support that inference, a burden he has failed to carry.

In addition, as Judge Locke found in the R&R in the First Action, "absent other sufficient factual detail, two separate incidents alleged by two individuals [Plaintiff and Diehl] are insufficient to establish a common practice for *Monell* liability as a matter of law." R&R, 2017 WL 9485669, at *5; *see also* Op. & Order, 2017 WL 3769246, at *4 (expressly overruling Plaintiff's objection to the R&R on this point). Having previously decided that Defendant's treatment of only two employees does not establish a policy or practice, Plaintiff's conclusory allegations regarding further treatment directed at him alone does not change the analysis.

Plaintiff's factual allegations regarding the Defendant's failure to promote him in 2017 are deficient for additional reasons. Read broadly, his allegation about Fredericks' promotion in late September 2017 is intended to demonstrate the untruthfulness of Defendant's representation that it was not hiring supervisors. He argues that Defendant "hired a new supervisor in a position Plaintiff was fully qualified to perform." Pl. Mem. in Opp. at 10 (citing Compl. ¶37). The very allegation Plaintiff cites belies his point, as the "new supervisor," Fredericks, was and had been a supervisor since 1990, and received a promotion to *regional* supervisor. As such, Fredericks' situation is not comparable to Plaintiff's. Furthermore, the fact that Defendant promoted Fredericks to a regional supervisor position is not inconsistent with its claim that it was not currently hiring supervisors.

Although *res judicata* bars relitigation of the prior claims, the pre-March 2016 allegations arguably could be used as evidence of a policy and practice culminating in the alleged violation in the fall of 2017. For the most part, the allegations in this Complaint are identical in substance to those in the First Action's amended complaint and suffer the same deficiencies in their lack of specificity. One exception is Plaintiff's identification in the complaint in this case of eight individuals, all members of various Republican Clubs, who were elevated to supervisor despite having less seniority and experience than Plaintiff. The complaint does not provide a single factual allegation regarding how the purported policy was implemented with respect to these promotions, such as the name of any individual at either the Sanitary District or the Club who allegedly played a part in these decisions. The conclusory facts regarding eight individual employees, without any factual context as to Defendant's actions in promoting those individuals, are insufficient to support a plausible claim.

Plaintiff has failed to allege the existence of a municipal policy and custom, thus foreclosing Defendant's liability. As such, the Court declines to analyze whether Plaintiff has adequately pled any constitutional claim under the First Amendment.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, DE [20] is granted and the case dismissed.

**SO ORDERED**.

      /s/
Sandra J. Feuerstein
United States District Judge

Dated: March 29, 2019
      Central Islip, New York